UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X
XIAO MENG XU,

       Plaintiff,                      <u>MEMORANDUM AND ORDER</u>

   -against-                     Civil Action No.
                                   CV-04-3927 (DGT)
JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

-------------------------------X

Trager, J:

    Plaintiff Xiao Meng Xu("Xu") brings this action pursuant to
the Social Security Act, 42 U.S.C. § 405(g), to review the
determination of the Commissioner of the Social Security
Administration ("Commissioner") denying Xu's request for
disability insurance benefits.  Xu is seeking insurance benefits
for a claimed disability caused by permanent injury to his right
eye.  The Commissioner moves pursuant to Federal Rule of Civil
Procedure 12(c) for judgment on the pleadings affirming the her
decision denying benefits.  For the following reasons, the
Commissioner's motion is granted.

## Background

## (1)

## Procedural History

Xu applied for disability insurance benefits from the Social Security Administration on February 2, 2001 claiming disability due to an injury causing blindness in his right eye. The injury occurred while he was working as a stone setter on October 13, 2000. (Tr. 37-54, 42.) The Social Security Administration initially denied the application due to a finding that Xu was not sufficiently disabled. (Tr. 21-25.)

Xu requested and received a hearing before an Administrative Law Judge ("ALJ") on September 10, 2002. (Tr. 26, 115-139.) At the hearing, Xu appeared pro se and acknowledged to the ALJ that he had received a notice by mail regarding his right to legal representation. (Tr. 118, 28-29.) The ALJ asked Xu if he wished to proceed without representation and Xu responded affirmatively. (Tr. 118.) Although Xu's first language is Mandarin Chinese and an interpreter was present at the hearing, Xu testified in English. (Tr. 115-117; Audio tape: Xiao Meng Xu's Administrative Hearing (Sept. 10, 2002) (on file with the Court) ("Audio tape: Xu's Hearing").) Xu had previously indicated on his Social Security Disability Report that he could read English and could write more than his name in English (Tr. 41) and the ALJ mentioned to Xu several times that he could rely on the

2

interpreter during the hearing if he wished.  (Tr. 117, 119.)

The letter notifying Xu of his right to counsel also informed him that he could bring other evidence with him to the hearing or "ask the ALJ to issue a subpoena that require[d] a person to submit documents or testify at [his] hearing."  (Tr. 29.)  During the hearing the ALJ asked Xu if he had any other evidence to submit for consideration.  (Tr. 118.)  In response, Xu submitted two letters: one from his treating physician, Dr. Louis Angioletti ("Dr. Angioletti"), and the other from "the worker's compensation department."  Id.

The only witness called at the hearing other than Xu was a vocational expert, Andrew Pasternak ("VE Pasternak"), who testified as to what types of jobs are available in the national economy that Xu would be able to perform.  (Tr. 119, 127, 130-36.)  VE Pasternak testified that a person with Xu's injury in similar circumstances would be unable to continue his former work activities as a stone carver and stone setter, but would be capable of medium work including performing several types of unskilled jobs available in the national economy.  (Tr. 130-36.) The jobs he suggested included:  restaurant bus person, sales attendant, credit clerk, museum guide, usher and ticket taker, and surveillance monitor.  (Tr. 134-35.)  The ALJ asked Xu if he would like to question VE Pasternak, but Xu declined.  (Tr. 136.) The ALJ also advised Xu of several coping techniques that might

help him overcome the limitations of his medical condition and allow him to become more productive.[1]  (Tr. 129-30.)

On November 26, 2002, the ALJ issued his decision, finding that Xu was not disabled within the meaning of the Social Security Act and Xu was not entitled to disability insurance benefits.  (Tr. 11-20.)  The ALJ's decision stated, in part, that Xu was capable of medium work and that Xu's claims about his limitations due to his injury were not totally credible.  (Tr. 17, 19.)

Following the ALJ decision, Xu retained an attorney who filed an appeal with the Appeals Council on December 19, 2002. (Tr. 8-10, 113.)  The attorney submitted a letter requesting reversal or remand to the Appeals Council.  As additional evidence the attorney submitted a letter dated January 7, 2004 from Dr. Angioletti, which stated that, due to the heavy bleeding from Xu's eye, he had advised Xu to only perform work that required him to lift no more than nine pounds.  (Tr. 113-14, 111.)  The doctor wrote the letter after examining Xu that same day.  (Tr. 111.)  The Appeals Council denied Xu's request for review of the ALJ's decision on August 10, 2004, making the ALJ's decision the final opinion of the Commissioner of Social

---

[1] The ALJ told Xu that he had handled many cases involving people with monocular vision and suggested that Xu might try wearing a patch, dark glasses or glasses in which one lens is "black" or opaque.

4

Security.  (Tr. 3-6.)

Xu filed the present appeal in the Eastern District of New York on September 13, 2004 under 20 C.F.R. § 404.981.  In addition to Xu's Memorandum of Law, Xu submitted a May 16, 2005 report of Vocational Expert Edward Provder ("VE Provder"). VE Provder's report found, in sum, that Xu is "unemployable for any job existing in the competitive labor market."  VE Provder based this determination on the combination of Xu's eye injury, his difficulties with the English language, his lack of transferable skills and Dr. Angioletti's advisement that Xu lift no more than nine pounds.  (Pl.'s Mem. of Law, Attach. 12.)

**(2)**

**Xu's Personal History**

Xu was born on October 29, 1955 in China.  (Tr. 37.)  He came to the United States in 1988 and is a United States citizen. (Tr. 120, 37.)  Xu studied sculpture in college in China for one year, studied English at Queens College in New York for one year and studied sculpture at the Pennsylvania Academy of Fine Art in Philadelphia for one year.  (Tr. 120, 67.)  Xu also studied textile design at TP Art and Design School in New York.  (Tr. 48, 67.)

Xu worked as a freelance artist doing textile design from 1990 to 1994.  (Tr. 70-71, 121.)  Since 1996 Xu has held a number of jobs working as a stone carver, stone mason and stone setter.

5

(Tr. 70-71.)  After his injury in October 2000, his treating

physician, Dr. Angioletti, declared Xu legally blind in his right

eye and advised him not to continue in his previous line of

employment.  (Tr. 90, 106-07.)  Xu has looked for other work but

has not been hired; he claims that he does not have any other

experience that would enable him to find work.  (Tr. 136, 130.)

Since the eye injury, Xu's activities have been limited to

cooking, cleaning, watching television, some exercise, and weekly

grocery shopping.  (Tr. 55.)  He occasionally takes public

transportation and meets friends at restaurants a few times each

month.  Id.

Xu does not take any pain medication.  (Tr. 126.)  However,

he occasionally experiences discomfort from the injury and an

ache on the right side of his head.  (Tr. 126, 57-8.)

**(3)**

**Medical Evidence Available to the ALJ**

Xu was injured when a piece of a blade struck his right eye.

(Tr. 74.)  He was taken to Bellevue Hospital by ambulance where

they performed a CT Scan and repaired his eye lid.  (Tr. 45, 75-

82.)  Xu saw Dr. Angioletti at The New York Eye & Ear Infirmary

by referral for treatment for his retina injury.  (Tr. 44, 91.)

Dr. Angioletti diagnosed extensive vitreous hemorrhaging and

trauma.  (Tr. 91.)  Between November 2000 and January 2001 Dr.

Angioletti performed two surgeries on Xu to attempt to repair his

eye.  (Tr. 68, 106.)  In February 2001 Dr. Angioletti wrote a

letter explaining that Xu is legally blind in his right eye.

(Tr. 90.)  In a another letter, dated March 2001, Dr. Angioletti

stated that it would be "impossible for this patient to continue

in his regular line of employment." (Tr. 107.)

     After Dr. Angioletti wrote this letter, two independent

doctors examined Xu on behalf of two state agencies.  In May

2001, Dr. Frank Titone examined Xu for the New York State

Department of Temporary and Disability Assistance.  (Tr. 92-104.)

Dr. Titone indicated that Xu could perform work that does not

require binocular visual acuity and that Xu's claims of

disability are credible but not to the extent he alleged.  (Tr.

98, 101.)  In February 2002 Dr. Harvey Rosenblum performed a

medical examination for the State Insurance Fund and found that

Xu had a permanent visual disability in the right eye which

completely obscured his vision in that eye.  (Tr. 109-10.)  Dr.

Rosenblum determined that the injury would not respond to any

further treatment.  Id.

## Discussion

## (1)

### Parties Arguments

In her motion for judgment on the pleadings, the
Commissioner argues that the ALJ's decision was based on the
correct legal standards, was supported by substantial evidence,
and should be affirmed.  (Def. Mem. 11-22.)  The Commissioner
contends that the ALJ's decision was correct because Xu retained
the residual functional capacity to perform other work and
substantial evidence existed to support this decision.  Id.

In response Xu asserts that he was not adequately apprised
of his right to counsel, that he has a poor command of the
English language, and that he was prejudiced by the ALJ's failure
to develop adequately the record on his behalf.  (Pl.'s Mem. of
Law 9-13.)  Xu also argues that the ALJ improperly evaluated his
credibility and pain.  Id. at 13-16.  To support these arguments,
Xu attached the vocational evaluation of VE Provder to his
memorandum, impliedly requesting this evaluation be considered
here.  (Pl.'s Mem. Of Law, Attach. 12.)  Xu claims the Appeals
Council should have considered Dr. Angioletti's January 2004
letter.  He also claims that due to his difficulties with the
English language, he is unable to perform the jobs suggested by
VE Pasternak.

The Commissioner contends, though, that the record shows

8

that Xu was able to communicate effectively in English, was adequately informed of his right to counsel, and that the ALJ adequately developed the record. (Def.'s Reply Mem. at 2-11.) As well, the Commissioner contends that the new evaluation of VE Provder does not support a remand. Id. at 12-13.

**(2)**

**Standard of Review**

A district court reviewing an ALJ's decision is limited to determining whether the decision was based on substantial evidence that existed in the record and whether the ALJ's conclusions were based on correct legal standards. Cruz, 912 F.2d at 11; Hicks v. Apfel, No. 98-6648, 1999 U.S. Dist. LEXIS 7996, at *17-18 (E.D.N.Y. 1999.) Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A district court must look at the entire record, including evidence that is contradictory or from which conflicting inferences can be drawn. Brown v. Apfel, 174 F.3d 59, 61-2 (2d Cir. 1999). However, if substantial evidence supported the ALJ's decision, a district court may not substitute its own judgment for that of the ALJ. Brown v. Bowen, 905 F.2d 632 (2d Cir. 1990), cert. denied, 498 U.S. 1093 (1991).

**(3)**

### Standard for Determination of Disability

To prove he is disabled, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(a).  Further, the impairment must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(a).

In evaluating a claimant's application the ALJ must follow a sequential five-step process to determine whether the applicant is disabled.  20 C.F.R. § 404.1520; DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998).  First, the ALJ must determine whether the claimant is currently engaged in any substantial gainful work activity.  20 C.F.R. § 404.1520.  If so, the ALJ will find a claimant is not disabled.  Id.  Second, the ALJ will consider the medical severity of the impairment.  Id.  If the impairment is not severe enough the claimant is not disabled. Id.  The third step also considers the medical severity of the impairment by seeing if it is a statutorily enumerated

10

disability.  Id.  Fourth, the ALJ considers his or her own

assessment of the claimant's residual functional capacity based

on the evidence and decides whether the claimant would be able to

perform the type of work the claimant performed before the

injury.  Id.  If the ALJ decides that the claimant would be able

to do such work, then the claimant is not disabled.  Id.  For the

fifth step, the ALJ determines whether the individual claimant

would be able to adjust to other work, considering his residual

functional capacity, age, education and work experience.  Id.  If

the claimant can adjust to other work the ALJ will find that the

claimant is not disabled.  Id.

**(4)**

**Analysis**

**a. Review of the Administrative Hearing**

Reviewing courts must first determine whether a plaintiff

has received a full and fair hearing.  Elias, 54 F. Supp. 2d at

177 (citing Cruz, 912 F.2d at 10-11).  A claimant is entitled to

be represented by counsel at a Social Security disability

hearing.  42 U.S.C. § 406.  See Hankerson v. Harris, 636 F.2d

893, 895 (2d Cir. 1980).  This right to counsel can be waived,

but the ALJ must ensure that the claimant is aware of the right,

Robinson v. Sec of HHS, 733 F.2d 255, 257 (2d Cir. 1984), and

must ensure that the waiver is made knowingly and voluntarily.

Colondres v. Barnhart, 04-1841, 2005 U.S. Dist. LEXIS 754

11

(S.D.N.Y. 2005).

The record in this matter shows that the ALJ properly apprised Xu of his right to counsel, that his waiver of that right was made knowingly and voluntarily and that he had sufficient command of the English language to understand the waiver. The ALJ notified Xu of his right to counsel at the hearing and notified Xu that some attorneys could be retained free of charge or on contingency. (Tr. 118.) See Frank v. Chater, 924 F. Supp. 416, 424 (E.D.N.Y. 1996) (explaining that information on cost of representation is particularly necessary in disability cases). Xu acknowledged receipt of a written notice of the right to counsel prior to the hearing and clearly stated at the hearing that he wished to proceed without counsel. (Tr. 118.)

In addition to making a claimant aware of his rights, the ALJ also has an affirmative obligation to develop the administrative record, Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996), and this duty is heightened where the claimant is acting pro se. Elias, 54 F. Supp. 2d at 177. In the present matter, the ALJ properly developed the record and Xu received a full and fair hearing. Generally, an ALJ must carefully probe and explore all relevant facts and should inquire into the claimants symptoms, treatment, and daily activities. Elias, 54 F. Supp. 2d at 177. Here the record shows that the ALJ gave Xu an

12

opportunity to discuss his symptoms and medication, as well as his daily activities and ease of mobility. (Tr. 126, 55.) In his decision, the ALJ considered all of Xu's medical evidence. (Tr. 16-17.)

On appeal here, Xu argues that during the hearing he was unable to effectively communicate in English and suggests that this hindered his right to a full and fair hearing. (Pl.'s Mem. of Law 2, 11, 12.) The evidence in the record does not support this assertion. Xu indicated on his Social Security Disability Report that he could read English and could write more than his name. (Tr. 41.) At the hearing, Xu chose to testify in English rather than rely on the Mandarin Chinese interpreter. (Tr. 117, 119.) Not only the transcript, but also the audio tape of the hearing which was provided to the court, show that Xu's communication in English was effective. (Tr. 117-139; Audio tape: Xu's Hearing.) On the audio tape Xu communicated reasonably clearly in English, he did not have to rely on the interpreter, and he indicated several times he understood what was happening. (Audio tape: Xu's Hearing.)

Xu also argues that the ALJ improperly evaluated the credibility of his claims of pain and disability. (Pl.'s Mem. of Law 13-16.) The Social Security Administration's regulations require the ALJ to consider objective medical evidence, 20 C.F.R. § 404.1527, as well as other factors including: daily activities;

location, duration and frequency of pain; aggravating factors; medication and treatment; and any other limitations. 20 C.F.R. § 404.1529. In this case the ALJ properly considered the medical evidence of several doctors including the February and March 2001 letters from Xu's treating physician, Dr. Angioletti, which declared that Xu was legally blind in the right eye and could not continue in his present job. (Tr. 16-17, 90, 107.) In Dr. Angioletti's medical opinion, at the time of the hearing, Xu was not limited in his ability to lift, carry, stand, walk, sit, push or pull. (Tr. 88.) The ALJ asked Xu about his symptoms, pain, and activities during the hearing (Tr. 126) and considered this information in his decision. (Tr. 16-17.) The ALJ noted that Xu did not take medication or receive any treatment other than eye drops, that he had looked for work and that he was able to perform normal daily activities. Id. The ALJ determined, based on this medical and non-medical evidence, that Xu's claims of disabling pain were not totally credible. (Tr. 19.) This determination was within the ALJ's discretion. See Saviano v. Chater, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997), aff'd, 152 F.3d 920 (2d Cir. 1998) (emphasizing that it is the function of the Commissioner to pass on the credibility of witnesses).

In addition the ALJ did not commit any clear error in his application of the five-step evaluative process. The ALJ determined that: (1) Xu was not currently engaged in any work

14

activities; (2) Xu's injury was severe; (3) Xu did not have a statutorily enumerated injury; and (4) Xu was not able to perform his previous relevant work. (Tr. 15-19.) However, the ALJ determined that Xu did not pass the fifth step of the evaluative process; he was able to perform other types of jobs that were available in the national economy. (Tr. 14-20.) As such, Xu was not sufficiently disabled to receive disability insurance benefits. (Tr. 20.) The ALJ properly reached this decision by determining Xu's residual functional capacity for medium work and questioning VE Pasternak about available jobs. Id.

**b. Additional Evidence Submitted to Appeals Council**

In general, when claimants appeal to the Appeals Council they are authorized to submit additional evidence. Perez, 77 F.3d at 45. This evidence becomes part of the record for judicial review if the evidence relates to the relevant period of disability that the ALJ's decision encompassed. Baladi v. Barnhart, 33 Fed. Appx. 562, 564 (2d Cir. 2002); Perez, 77 F.3d at 45. Evidence that relates to a claimant's condition after the administrative hearing may not be considered by the Appeals Council. Baladi, 33 Fed. Appx. at 563-64.

In addition to the evidence considered by the ALJ, Xu submitted to the Appeals Council a letter from Dr. Angioletti, which stated that Xu should not lift more than nine pounds. (Tr. 111.) The Appeals Council dismissed this letter as evidence

relating to Xu's condition after the relevant time period. (Tr. 4.)

The letter was dated January 7, 2004, and referred to an examination conducted on the same date, more than three years after the date of the accident and over two years after the administrative hearing. A diagnosis that post-dates an administrative hearing may be considered new evidence relating to the relevant time period only if it reveals that a claimant "had an impairment substantially more severe than was previously diagnosed." Lisa v. Sec. of HHS, 940 F.2d 40, 44 (2d Cir. 1991). While Dr. Angioletti's letter does not clearly state the time period to which it relates, the letter makes no suggestion that Xu's condition was more severe than first thought, nor does it explain the reason for the new workload restriction of nine pounds. (See Tr. 111.) Based on this, the Appeals Council's rejection of the letter was reasonable.

However, even if Dr. Angioletti's letter did relate to the Xu's condition as of the ALJ hearing, the letter would still not have change the outcome of the hearing. As Xu's treating physician, Dr. Angioletti's medical opinion should be given substantial weight if it is supported by medical evidence and there is an absence of contradictory evidence in the record. 20 C.F.R. § 404.1527(d)(2); Ocasio v. Barnhart, No. 00-6277, 2002 U.S. Dist. LEXIS 12240, at *20-21 (E.D.N.Y. 2002). However, Dr.

16

Angioletti's letter is not supported by any medical evidence or previous medical reports, including medical reports from Dr. Angioletti himself, which made no suggestion of any workload limitations. (See, e.g., Tr. 90, 106-7, 109-10).

In addition, the letter's suggestion that Xu cannot lift more than nine pounds, being made as it was, after the ALJ rejected Xu's claim for disability, is suspicious. Ten pounds is the threshold for determining whether a claimant is capable of sedentary or light work. 20 C.F.R. § 404.1567(a). The precise nature of Dr. Angioletti's nine-pound limitation seems devised to specifically suggest that the ALJ's determination that Xu was capable of medium work is incorrect. The combination of the timing of this letter, the precise nature of the weight restriction, and the lack of other supporting evidence combine to place doubt on the credibility of Dr. Angioletti's determination. As a result, since Dr. Angioletti's letter does not relate to the relevant time period, was not supported by other medical evidence, and is of questionable veracity, the Appeals Council correctly did not consider it to be part of the record to be reviewed.

c. VE Provder's Report is Immaterial

While Xu does not directly argue for the consideration of VE Provder's evaluation, its attachment to his memo impliedly requests that it be considered. Reviewing courts may remand

under sentence six of 42 U.S.C. § 405(g), when the court "learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding."  Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990).  For new evidence to be considered, claimants must show  that the evidence is indeed new, that it is material and that there was good cause for failing to incorporate it into the record previously.  42 U.S.C. § 405(g); Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988).

In this matter, it is irrelevant whether VE Provder's vocational evaluation is new because it is not material and, therefore, will not be considered.  In order to be material, evidence must relate to the time period in question, it must be probative and there must be "a reasonable possibility that [it] would have influenced the [Commissioner] to decide claimant's application differently."  Tirado, 842 F.2d at 597.  Even though VE Provder's evaluation rebuts the testimony of VE Pasternak, it is unlikely to have influenced the Commissioner to decide Xu's claim differently.

VE Provder's evaluation relied upon two assertions that have been rejected here.  First, it relied upon Dr. Angioletti's letter limiting Xu's exertion, a letter which, even if credited, was not relevant to the time period the hearing considered.  As that letter was not relevant and is not being considered, it is

an inappropriate foundation upon which to base a vocational report.  Second, VE Provder assumed that Xu had poor English skills when assessing his vocational abilities.  However, as mentioned, a review of both the transcript and the audio tape of the hearing indicates that Xu can communicate effectively in English.  Due to these two defects, VE Provder's evaluation is immaterial and could not have caused the ALJ to decide Xu's case differently.

## Conclusion

The Commissioner has shown that the ALJ's determination was based on substantial evidence and on a correct legal analysis.  In addition, the new evidence provided by Xu was rightly rejected by the Appeals Council and the new Vocational Expert report is rejected by this court.  As a result, the Commissioner's motion for judgment on the pleadings is granted.  The Clerk of the Court is directed to close this case.

Dated: Brooklyn, NY
       March 7, 2006

SO ORDERED:


_____/s/_____
David G. Trager
United States District Judge

19